IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The Center for Reproductive Rights<br>199 Water Street<br>New York, NY 10038<br><br>    Plaintiff,<br><br>v.<br><br>U.S. Department of State<br>The Executive Office<br>Office of the Legal Adviser, Room 5519<br>Washington, DC 20520<br><br>    Defendant. | Case No. _____ |

**COMPLAINT**

**NATURE OF ACTION**
(Freedom of Information Act)

Plaintiff, the Center for Reproductive Rights ("the Center" or "Plaintiff"), brings this action against Defendant, the U.S. Department of State ("State Department") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

On August 29, 2025, the Center filed a FOIA request with the State Department seeking certain information regarding the potential destruction of contraceptive supplies purchased with taxpayer funds by the U.S. Agency for International Development ("USAID") to provide critical reproductive health care in five African countries. As further alleged below, the information that the Center seeks—about the State Department's decision to destroy the contraceptive supplies, any alternatives to destruction that the State Department considered, and the cost of destruction—are

directly relevant to the Center's mission to expand access to contraception around the world. The requested information is also vital to the public interest in understanding the operations and activities of the government, being able to scrutinize the government's decisions, and holding the government accountable.

The State Department has not claimed that the requested information is subject to any FOIA exceptions or privilege and has not advanced any other reason why it should not be disclosed. Despite the statutory requirement that an agency respond to a FOIA request within 20 days, or 30 days in the case of unusual circumstances, it has now been 108 days since the Center filed its FOIA request, and the State Department has failed to produce any documents in response. The Center seeks to compel the State Department to comply with its obligations under FOIA and promptly produce the requested information.

## PARTIES

1. Plaintiff, the Center for Reproductive Rights, is a 501(c)(3) non-profit corporation incorporated under the laws of the State of New York and headquartered at 199 Water Street, New York, NY 10038. The Center is dedicated to using the power of law to advance reproductive rights as fundamental human rights around the world. It is the only global legal advocacy organization dedicated to reproductive rights, and its litigation and advocacy has played a key role in expanding access to reproductive health care around the world.

2. Defendant U.S. Department of State is an "agency" of the United States Government as defined by 5 U.S.C. § 551(1) and 5 U.S.C. § 552(f)(1). The State Department is headquartered at 2201 C Street NW, Washington, DC 20520. The State Department has possession, custody, and control of the documents that the Center seeks in response to its FOIA Request.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, and 2202 and 5 U.S.C. § 552(a)(4)(B).

4. Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

5. Because Defendant failed to comply with the requirements in 5 U.S.C. § 552(a)(6)(A) and 5 U.S.C. § 552(a)(6)(B), the Center is deemed to have constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendant from continuing to withhold responsive records and ordering the production of improperly withheld records, *see* 5 U.S.C. § 552(a)(4)(B).

## STATEMENT OF FACTS

**A.    The Dismantling of USAID**

6. On the same day he took office on January 20, 2025, President Donald J. Trump signed Executive Order 14169, "Reevaluating and Realigning United States Foreign Aid," which paused new obligations and disbursements of U.S. foreign development assistance funds pending a 90-day review of foreign development assistance programs.[1]

7. On January 24, 2025, a State Department communique announced a pause on all new obligations of funding for foreign assistance programs funded by the State Department and USAID and ordered officers to immediately issue stop-work orders.[2]

---

[1] Exec. Order No. 14169, 90 Fed. Reg. 8619 (Jan. 30, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-30/pdf/2025-02091.pdf.

[2] Fatma Tanis, *U.S. Puts Virtually All Foreign Aid on 90-Day Hold, Issues 'Stop-Work' Order*, NPR (Jan. 24, 2025), https://www.npr.org/sections/goats-and-soda/2025/01/24/g-s1-44643/trump-foreign-aid-assistance-pause.

8. On January 24, 2025, USAID issued a Notice on Implementation of the Executive Order, which directed its officers to issue stop-work orders.[3]

9. On January 27, 2025, more than 50 USAID senior employees were put on leave.[4]

10. On January 28, 2025, Secretary of State Marco Rubio issued a waiver of the pause on foreign assistance for "life-saving humanitarian assistance," but that waiver did not apply to "activities that involve abortions [or] family planning . . . ."[5]

11. On May 28, 2025, the Office of Management and Budget proposed billions of dollars in rescissions from the budgets for the State Department and USAID. This cancellation of funding previously appropriated by Congress included $500 million in rescissions from USAID's Global Health Programs, seeking to eliminate programs "that are antithetical to American interests and worsen the lives of women and children, like 'family planning' and 'reproductive health.'"[6] On June 12, 2025, the House passed a bill to rescind the proposed amounts. The bill passed the Senate with an amendment on July 17, and the rescissions were enacted as law on July 24, 2025.[7]

---

[3] USAID, *Notice on Implementation of Executive Order on Reevaluating and Realigning United States Foreign Aid* (Jan. 24, 2025), https://research.jhu.edu/wp-content/uploads/2025/02/2025.01.24-USAID-Stop-Work-Order.pdf.

[4] Daphne Psaledakis, Humeyra Pamuk, and Simon Lewis, *Trump Administration Targets Dozens of Senior USAID Staff After Aid Freeze*, REUTERS (Jan. 27, 2025), https://www.reuters.com/world/us/trump-administration-puts-leave-nearly-60-usaid-career-staff-after-aid-freeze-2025-01-28/.

[5] Secretary of State Marco Rubio, *Emergency Humanitarian Waiver to Foreign Assistance Pause* (Jan. 28, 2025), https://www.state.gov/emergency-humanitarian-waiver-to-foreign-assistance-pause/.

[6] Rescissions Proposals Pursuant to the Congressional Budget and Impoundment Control Act of 1974, 90 Fed. Reg. 24,298 (June 9, 2025), https://www.govinfo.gov/content/pkg/FR-2025-06-09/pdf/2025-10377.pdf.

[7] Rescissions Act of 2025, 119th Cong. § 2 (2025).

12. On July 1, 2025, USAID officially shut down.[8]

**B.     USAID's Contraception Stockpile**

13. In July 2025, multiple news outlets reported that the Trump Administration planned to destroy contraceptive products worth approximately $9.7 million.[9] Those contraceptive products—acquired pursuant to the authority of and appropriations approved by Congress—were stored in a warehouse in Belgium and were intended for patients in low-income countries, including the Democratic Republic of the Congo, Kenya, Tanzania, Zambia, and Mali.

14. Instead of delivering the contraceptive products to their intended recipients, the Trump Administration decided to incinerate them, at additional taxpayer cost and environmental risk.[10] The State Department confirmed the decision to incinerate the contraceptive products and stated that it would cost $167,000 to do so.[11]

15. The European governments, especially the Belgian and French governments, object to the destruction of these contraceptive products and are seeking to prevent their destruction.[12]

---

[8] Fatma Tanis and Leila Fadel, *USAID Officially Shuts Down and Merges Remaining Operations with State Department*, NPR (July 1, 2025), https://www.npr.org/2025/07/01/nx-s1-5451372/usaid-officially-shuts-down-and-merges-remaining-operations-with-state-department.

[9] *See, e.g.*, Carter Sherman, *Trump Administration to Destroy Nearly $10m of Contraceptives for Women Overseas,* THE GUARDIAN (July 18, 2025), https://www.theguardian.com/us-news/2025/jul/18/trump-administration-destroy-contraceptives-usaid-africa.

[10] Jeanna Smialek and Stephanie Nolen, *As Trump Administration Plans to Burn Contraceptives, Europeans Are Alarmed*, NEW YORK TIMES (Aug. 7, 2025), https://www.nytimes.com/2025/08/07/world/europe/usaid-contraceptives-trump.html.

[11] Rachel Treisman, *The U.S. is Destroying $9.7 Million in Contraceptives. Is There Another Option?* NPR (July 28, 2025), https://www.npr.org/sections/goats-and-soda/2025/07/28/nx-s1-5482742/the-u-s-is-destroying-9-7-million-in-contraceptives-is-there-another-option.

[12] *See supra* n.10.

5

16. According to Doctors Without Borders, a humanitarian non-governmental organization ("NGO"), the contraceptive products at issue have expiration dates ranging from 2027 through 2031, making the products effective and usable contraception tools.[13] Other humanitarian organizations offered to buy the contraceptive products from the U.S. government and to distribute them, but the U.S. government rejected those offers, citing the "Mexico City policy" and falsely characterizing the contraceptives at issue as "abortifacients."[14] Under the so-called "global gag rule," also known as the "Mexico City policy," foreign NGOs are not allowed to use U.S. federal funds to provide, counsel, or advocate for legal abortion services.[15] The Trump Administration reinstated that policy on January 24, 2025.[16]

17. Contraceptives are not abortifacients. Contraceptives prevent pregnancy; abortifacients are substances that terminate an existing pregnancy.

C.  **The Center's FOIA Request**

18. Given the lack of clarity and transparency surrounding the U.S. government's stockpile of contraceptive products and its possible destruction, on August 29, 2025, the Center filed a FOIA request with the State Department seeking information about the decision to

---

[13] *Id.*

[14] Stephanie Nolan, Jeanna Smialek and Edward Wong, *$10 Million in Contraceptives Have Been Destroyed on Orders From Trump Officials*, NEW YORK TIMES (Sep. 11, 2025), https://www.nytimes.com/2025/09/11/health/usaid-contraceptives-destroyed-trump.html (citing a spokeswoman for USAID as saying, "[t]he administration will no longer supply abortifacient birth control under the guise of foreign aid.").

[15] Treisman, *supra*.

[16] Memorandum for the Secretary of State[,] the Secretary of Defense[,] the Secretary of Health and Human Services[, and] the Administrator of the United States Agency for International Development, 90 Fed. Reg. 8,753 (Jan. 24, 2025), https://www.govinfo.gov/content/pkg/FR-2025-02-03/pdf/2025-02176.pdf.

potentially destroy $9.7 million in contraceptive supplies purchased by USAID using U.S. taxpayer money.

19. The FOIA request also sought information regarding the process for determining (a) what alternatives to destruction were considered, including distribution of the contraceptive supplies and sale to willing third parties; (b) the cost to taxpayers of these alternatives, including destruction; and (c) why destruction was prioritized by the State Department. In addition, the Center sought information regarding political pressure from within the Trump Administration or external organizations opposed to reproductive rights to arrive at the decision to destroy the contraceptive supplies.

20. Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), the Center sought a waiver of the fees associated with its FOIA request, or, in the alternative, a reduction in fees given that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." The Center provided supporting justification for its waiver request.

21. A true and correct copy of the Center's FOIA request to the State Department is attached as Exhibit A.

22. Shortly following the submission of the FOIA request on the State Department's FOIA Submission Site, the Center received an automated response acknowledging receipt of the FOIA request. A true and correct copy of this acknowledgement is attached as Exhibit B.

23. In a letter dated September 8, 2025, the State Department confirmed receipt of the FOIA request. The letter provided a request number of F-2025-26796. The letter stated that the State Department "will not be able to respond with the 20 days provided by the statute due to

'unusual circumstances.' In this instance, the unusual circumstances include the need to search for and collect requested records from other Department offices or Foreign Service posts." The letter also denied the Center's request for a fee waiver, finding that the Center's FOIA request did not satisfy the public interest standard set forth in § 22 CFR 171.16(j)(2)(ii), which requires that disclosure of the requested records be "meaningfully informative about government operations or activities" and "contribute to the understanding of a reasonably broad audience of persons interested in the subject." A true and correct copy of the State Department's September 8, 2025, letter confirming receipt of the FOIA request and denying the Center's request for a fee waiver is attached as Exhibit C.

**D.    The State Department's Failure to Adequately Respond to the Center's FOIA Request**

24.    Pursuant to FOIA, within 20 business days of receipt of the Center's request, the State Department was required to "determine . . . whether to comply with such request" and to "immediately notify" the Center "of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). In the case of an adverse determination, the State Department was required to notify the Center of its appeal rights within the same time frame. *Id.*

25.    In the case of "unusual circumstances," "the time limits . . . may be extended by written notice . . . . No such notice shall specify a date that would result in an extension for more than ten working days . . . ." 5 U.S.C. § 552(a)(6)(B)(i).

26.    According to its September 8 letter (attached as Exhibit C), the State Department determined that the Center's August 29 FOIA request fell into the "unusual circumstances" exception. As a result, the State Department was required to "determine . . . whether to comply with such request" and notify the Center of such determination no later than October 14, 2025. 5 U.S.C. § 552(a)(6)(A)(i).

27. As of the date of this Complaint (i.e., almost two months after the statutory deadline), the State Department has failed to (a) notify the Center of any determination regarding its FOIA request, including the scope of any responsive records the State Department intends to produce or withhold and the reasons for any withholding; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production. *See id.*

28. The State Department's failure to respond to the Center's FOIA request with a determination regarding the requests or the production of the requested records within the time period required by law means that the Center has constructively exhausted its administrative remedies and it therefore seeks immediate judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

## COUNT I

**Violation of FOIA, 5 U.S.C. § 552, *et seq*. (Access to Agency Records)**

29. The Center incorporates each of the foregoing paragraphs of this Complaint as if they were fully set forth herein.

30. The State Department is an agency subject to FOIA and must therefore make reasonable efforts to search for requested records.

31. Pursuant to FOIA, 5 U.S.C. § 552(a), the Center has a statutory right to access the requested, non-exempt agency records.

32. The State Department has failed to respond to the FOIA Request within the time limits set forth by FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

33. The State Department has failed to conduct a reasonable search for records responsive to the Request within the statutorily mandated time period.

34. The State Department is wrongfully withholding non-exempt agency records requested by the Center by failing to produce materials responsive to the Center's FOIA request.

35. The State Department is wrongfully withholding non-exempt agency records requested by the Center by failing to segregate non-exempt information from otherwise exempt records responsive to the FOIA request.

36. When an agency has "improperly withheld" records, this Court may "enjoin the agency from withholding agency records" and "order the[ir] production." 5 U.S.C. § 552(a)(4)(B).

37. The State Department is in violation of its statutory obligations under FOIA.

38. The Center is thus entitled to declaratory and injunctive relief requiring the State Department to promptly produce all non-exempt records responsive to the FOIA request and, if applicable, to provide a *Vaughn* index explaining, with specificity, the bases on which any responsive records are withheld as exempt.[17]

## COUNT II

### Violation of FOIA, 5 U.S.C. § 552, *et seq.* (Fee Waiver)

39. The Center incorporates each of the foregoing paragraphs of this Complaint as if they were fully set forth herein.

40. Pursuant to FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), documents are required to be provided to requesters without any charge or at reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the

---

[17] *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973). A Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index "must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." *King v. U.S. Dept. of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Id*. at 224 (citing *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

41. As a 501(c)(3) nonprofit organization, the Center does not have a commercial purpose and the release of the information requested is not in the organization's financial interest, but rather in the public interest by ensuring the public understands the operations and activities of USAID and the State Department.

42. By failing to grant the Center's request for a fee waiver, the State Department wrongfully denied the Center's request for a fee waiver, denying the Center's rights under 5 U.S.C. § 552(a)(4)(A)(iii).

43. The Center is thus entitled to declaratory and injunctive relief requiring the State Department to produce the requested documents at no fee or, in the alternative, at a reduced fee.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment for Plaintiff and award the following relief:

a. Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's FOIA request;

b. Order Defendant, by a date certain, to demonstrate that it has conducted a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's FOIA request;

c. Order Defendant, by a date certain, to produce to Plaintiff any and all non-exempt records or portions of records responsive to Plaintiff's FOIA request, and, if applicable, a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

d. Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request;

e. Order Defendant to produce to Plaintiff any and all non-exempt records or portions of records responsive to Plaintiff's FOIA request at no fee or, in the alternative, at a reduced fee;

f. Award Plaintiff its costs and attorneys' fees reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

g. Grant Plaintiff such other and further relief as the Court may deem just and proper.

December 15, 2025

Respectfully submitted,

*/s/ Ryan Quillian*

Ryan Quillian (D.C. Bar No. 994846)
rquillian@cov.com
Brooke Stanley (D.C. Bar No. 1612821)
bstanley@cov.com
Sarah Haddon (D.C. Bar No. 9005098)
shaddon@cov.com
Julie Meyer (D.C. Bar No. 90029721; *application for admission to this court pending*)
jmeyer@cov.com
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
Tel.: 202-662-6000
Fax: 202-662-6291

*Counsel for the Center for Reproductive Rights*